IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1855, IN THE THIRTY-NINTH
YEAR OF THE STATE.

———————•—•—•———————

SHOOK and Others *v.* THE STATE, on the relation of
STEVENS, Auditor, &c.

*Nil debet* is bad in debt on a bond.

The board of commissioners, treasurer, auditor, or any other officer who was
charged by the R. S. 1843 with the duty of protecting and preserving the
surplus revenue fund, was a proper relator in a suit on a bond given to
secure a loan from that fund.

In a suit on a surplus revenue bond, an allegation in the declaration that the
suit is brought "for the use of the surplus revenue fund," is mere sur-
plusage.

The pleader, in a suit on four surplus revenue bonds, (which contained a
stipulation that in case of a failure to pay any instalment of interest, the
principal should become due and collectable, &c.,) stated the action to have
accrued upon the non-payment of the annual instalments of interest; but
the action was not brought until the principal on the last of the several
bonds was due, and there was a breach to each count in which the non-
payment of the bond was averred. *Held,* that the defect, if any existed,
was cured by the breaches last named.

The surplus revenue fund belongs to the *United States,* but is held in trust by
the state, who is the legal custodian thereof; and the averment, in a suit on
a bond to that fund, that the bond had not been paid to the state, is
sufficient.

A defect in the mere form of a declaration can not be examined on demurrer
to a defective plea.

VOL. VI.—8

May Term,
1855.

SHOOK
v.
THE STATE.

The R. S. 1843 allowed interest to be taken on loans of the surplus revenue, at the rate of 7 per cent. per annum in advance; and the statute fixing the rate of interest generally, and defining the offence of usury, expressly excepted from its operation those provisions of law which related to the loaning of the trust funds of the state.

The bonds declared on in this case were substantially in the form prescribed by the statute to be taken on loans of the surplus revenue, and there was no averment in the pleas that they were made upon any other consideration. *Held*, that the presumption was that they were given for money borrowed from that fund.

To a declaration upon an instrument which does not appear on its face to be usurious, a plea of usury must allege that an excess of interest was reserved with a corrupt intent.

An agreement with the principal to enlarge the time for the payment of a debt, must be founded upon a consideration, in order to discharge the surety.

An instruction is right, if correct in its application to the evidence, although it might be erroneous as an abstract proposition.

It appeared in evidence, in the present case, that the bonds sued upon were given to settle a defalcation of the principal as agent of the surplus revenue fund, and they were made in the form required upon loans, to become due at future periods, with interest payable annually. *Held*, that the jury had a right to treat them as evidence of a loan.

Monday,
May 28, 1855.

ERROR to the *Ripley* Circuit Court.

GOOKINS, J.—Debt on four writings obligatory under seal, dated *January* 23, 1845, one for 100 dollars, due *January* 23, 1846; one for 100 dollars, due *January* 23, 1847; one for 100 dollars, due *January* 23, 1848; and one for 387 dollars and 42 cents, due *January* 23, 1850. These obligations were made by *David P. Shook, Peter Shook,* and *Hezekiah Shook,* sen., payable "to the state of *Indiana,* for the use of the surplus revenue fund of the county of *Ripley.*" They were joint and several, and conditioned for the payment of 7 per cent. interest per annum in advance, from date, with a stipulation that in case of a failure to pay any instalment of interest, the principal should become due and collectable, with all arrearages of interest; and that on failure to pay the principal or interest when due, 5 per cent. damages should be collected on the whole amount, and costs.

The action was brought on the 26th day of *March,* 1851, against *David P.* and *Peter Shook,* the other party being dead. *David P. Shook* made default. *Peter Shook* pleaded six pleas, on the second and third of which issues were

May Term,
1855.

SHOOK
v.
THE STATE.

joined, and to the first, fourth, fifth and sixth, demurrers were sustained. There was a trial of the issues joined upon the second and third pleas, which resulted in a verdict for the plaintiff for 687 dollars and 42 cents debt, and 169 dollars and 6 cents damages. Motion for a new trial overruled, and judgment on the verdict.

The first subject which demands our attention is, the issues of law arising upon the demurrers to the first, fourth, fifth and sixth pleas. The first, being a plea of *nil debet*, was evidently bad; but the plaintiff in error seeks through it to attack the declaration.

One objection taken to the declaration is, that the suit is brought "for the use of *Ripley* county," and "on the relation of the county auditor," and the case of *The State, ex rel., &c.* v. *Votaw*, 8 Blackf. 2, is relied on in support of this objection. It was decided in that case, that the county treasurer was a proper relator, where the action was brought to recover a portion of the surplus revenue to which the county was entitled. We think that decision correct; but it does not follow that no other person could properly become a relator. It was as much the duty of the auditor, by law, to protect and preserve this fund as of the treasurer. R. S. 1843, pp. 251, 252, 253, ss. 97 to 103. We think the board of commissioners, the treasurer, auditor, or any other officer whom the law charged with the duty of protecting and preserving the fund, might properly be a relator, and that the declaration was unobjectionable for the reason alleged.

The statement that the suit was brought "for the use of the surplus revenue fund," is of no consequence; it might be rejected as surplusage.

Another objection taken to the declaration is, that the breach is insufficient, because it states the action to have accrued upon the non-payment of the annual instalments of interest. It is true the pleader has so laid his breaches; but as this action was not brought until the principal on the last of the several bonds was due, and as there is to each count a breach laid, in which the non-payment of the bond is averred, the defect, if any, is cured.

It is further objected that the breaches are insufficient, in failing to allege the non-payment of the money to the county of *Ripley*. This objection is answered by the fact that the money did not belong to the county of *Ripley*. It belonged to the *United States*, but was held in trust by the state, who was the legal custodian of the fund. The averment that it had not been paid to the state was sufficient.

The declaration is good in substance, and no defects of form can be examined when it is attacked by means of a demurrer to a defective plea.

The fourth plea is *actio non*, as to 500 dollars of the principal, and all the interest in said bonds mentioned, and all costs, because the said writings obligatory "are usurious, as therein stated," and the said *David P. Shook* has paid interest thereon amounting to 500 dollars, before the commencement of this action. The fifth plea is *actio non* as to 206 dollars and 36 cents of the principal, and all interest and costs, because the said *David P. Shook*, before the commencement of this suit, paid the plaintiff the said sum of 206 dollars and 36 cents as interest at 7 per cent. per annum on said bonds, which was usurious. The question arising upon the demurrer to these pleas is, whether the bonds set out in the declaration are usurious upon their face. We think they are not. At the time they were made, interest might lawfully be taken upon loans of the surplus revenue, at the rate of 7 per cent. per annum in advance. R. S. 1843, p. 251, s. 95.—*Id.* 244, s. 36. And the statute fixing the rate of interest generally, and defining the offence of usury, expressly excepts from its operation those provisions of law which relate to the loaning of the trust funds of the state. *Id.* 583, s. 38. The bonds declared on are substantially in the form prescribed by the statute to be taken upon loans; and in the absence of any averment in the pleas that they were made upon any other consideration, the presumption is that they were given for money borrowed from that fund, and, consequently, it was not usury to reserve and take interest upon them at the rate of 7 per cent. per annum in advance.

There is some difference in the form of the fourth and fifth pleas. The latter states the usury to consist in the taking of 7 per cent. interest, which we have shown was not usurious. The fourth plea does not state the rate of interest taken, but avers that interest had been paid by one of the obligors, upon the several bonds, to the amount of 500 dollars. We shall not stop now to inquire whether an agent of the state, whose duties are prescribed by law, can, after a contract has been made, which was lawful in its inception, impair its obligation by taking an excess of interest. He has certainly no warrant from his principal, the state, for the illegal act, nor is there any presumption that the state ratifies the unauthorized act of her agent; and it would seem to follow that he who pays an excess of interest, under such circumstances, must suffer for his own folly. But we do not think it necessary, at present, to decide that question. There is no averment, in the fourth plea, that the excess was taken with a corrupt intent. In the case of *Reed* v. *Coale*, 4 Ind. R. 283, it was held that an instrument apparently usurious, could not be shown to have been made so without a corrupt intent. In the case of *Sutton* v. *Fletcher*, 6 Blackf. 362, it was held that a contract was not usurious, if the excess was contracted for by mistake, and without a corrupt intention; and evidence of the mistake was allowed. The conflict between these two cases is apparent rather than real. In *Reed* v. *Coale*, the usury appeared on the face of the instrument; in the other case it did not. In the first case, to have admitted evidence that the note was made to draw 10 per cent. through ignorance of a recent change of the law in relation to interest, would have been a departure from one of the soundest and most imperative rules of the law. But in the other case, a note not usurious on its face, was made for too large a sum, by an erroneous computation made by a third person who was called upon to draw it. This fact was proved, and correctly, in answer to a defence of usury set up to an action on the note. In the case of *Cohee* v. *Cooper*, 8 Blackf. 115, it was held that a plea of usury must aver that the agreement to take it was corruptly

made. In that case the excess did not appear upon the face of the contract, and, in such a case, at least, however it may be in regard to those where it does appear, the averment of a corrupt purpose is indispensable.

The sixth plea, which is pleaded to the first, second and third counts only, states that *Peter* and *Hezekiah Shook* were sureties for *David P. Shook* in said bonds; that after they became due, to-wit, on the 23d day of *January*, 1848, the plaintiff, without the defendant's knowledge, and against his will, agreed with *David P. Shook*, the principal, that in consideration that he would pay interest thereon at the rate of 7 per cent. per annum from that day to the 23d day of *January*, 1849, the plaintiff would give day of payment until the latter date; that (the previous interest having been paid) the said *David P. Shook* thereupon paid 21 dollars, being 7 per cent. interest in advance, and that thereupon the plaintiff gave day for one year, and until the bringing of this suit, during which time the said *David P. Shook* became insolvent.

Supposing it competent to allege that the state entered into an agreement of the kind set out in the plea, without the intervention of some agent authorized to make such a contract, which is not pretended, still the plea is defective because it shows no consideration for the supposed agreement for giving day. As we have already shown, the bonds in question drew interest at the rate of 7 per cent. per annum, payable in advance, and, as we understand them, the interest was to be paid annually. It was evidently the intention of the parties that time might be given on these bonds after maturity. The first was due one year after date, the interest payable in advance, and still it contains this stipulation, "that in case of failure to pay any instalment of interest, the said principal shall become due and collectable, together with all arrears of interest; and on failure to pay the principal or interest when due, five per cent. damages on the whole sum shall be collected, and costs." Now, as this bond was due one year after date, and, as the interest for that year had been already paid, there could be no sense in a stipulation for

the payment of future instalments of interest in advance, unless further time was to be given. The term "payable in advance," of itself, necessarily implied that at least one year's delay should be given after the payment of an instalment of interest. And we think this intention is evident from the language of all the several bonds, as well as of that which should first become due. As there was no consideration for the alleged agreement, it was not obligatory upon any party to it, and consequently it was not available for any purpose. The demurrer to this plea was properly sustained.

The second plea was, that the bonds sued on were executed without any consideration. The third was a plea of payment. Upon the trial of the issues joined upon these pleas, it appeared in evidence that previous to the date of the said bonds there was a deficiency in the surplus revenue funds of *Ripley* county, and that the board of commissioners appointed an agent to adjust the matter with *David P. Shook*, who had been an agent for the loaning of the fund. That *Shook* denied that the funds were in his hands, but alleged that they were in the hands of one *Watts*, who had preceded him in the agency. The agent appointed by the board of commissioners, in settlement of the defalcation, took from *David P. Shook* the bonds in question, with the other obligors as his sureties, for the amount of the deficiency, and reported his doings to the board of commissioners, who, by an order entered of record, approved the settlement. It further appeared that the interest had been paid annually, at 7 per cent., on the first and last of said bonds, to *January* 23, 1849, and on the second and third to *January* 23, 1850, which payments were properly indorsed by the auditor.

The Circuit Court instructed the jury, at the instance of the plaintiff, among other things, that if they believed from the evidence that the bonds were given in satisfaction of a claim which the state had against *David P. Shook*, for a balance alleged to have been in his hands, at the time the bonds were made, the plea that the bonds were made without consideration is not sustained.

The plaintiff in error complains of this instruction, by which he understands the jury were told that if the plaintiff pretended to have a claim against *David P. Shook*, and if the bonds were given for the adjustment of it, however false or groundless it may have been, the plaintiff was entitled to their verdict. We think the import of the charge is misconceived. The instruction was not upon an abstract question of law, but had reference to the proof. Taken in connection with the evidence, nothing can be clearer than that the bonds were in fact given for a consideration. It is an unreasonable presumption, and one not to be indulged in, that a person charged with a defalcation to the amount of near 700 dollars, would acknowledge it by giving bonds and security for its payment, if he were not in fact liable. The proof in the case scarcely tends to show that he had not retained the money in his hands, and is very far from that clear evidence which would have authorized a verdict for the defendant on that issue. Taken in connection with the evidence, the instruction was clearly right.

Under the plea of payment there was no evidence offer-ed, except the indorsements of the payment of interest as they appeared on the bonds. These were excluded from the amount of the verdict, which, so far as that plea is concerned, is for the proper amount.

The amount of the verdict is also complained of. It appears by computation that it includes interest at 7 per cent., and the 5 per cent. damages stipulated for in the bonds. There is no issue upon the record to which any evidence offered would have been applicable, for the purpose of reducing the amount of the verdict; but, supposing the defendant entitled to show, in an action of debt upon specialty, in which interest is sought to be recovered in the form of damages for detention, any matter proper to reduce the amount, we think it is not shown in this case. It appears from the evidence that the bonds were given to settle a defalcation, and they were made in the form required upon loans, to become due at future periods of time, with interest payable annually, and we are to pre-

sume that the parties intended to give them the character of a loan. It was of little consequence whether the money was paid, and received back in the form of a loan, or retained by *Shook*. Had the former been done, the bonds would have been in substantially the same form. It was treated by the parties as a loan, by the payment of interest from time to time, and we think the jury had a right so to regard it.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*E. Dumont*, for the plaintiffs.

*J. Ryman*, for the state.